UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00069-GNS

CORNELIUS L. KING                                                                                          PLAINTIFF

v.

DEPUTY MARRISSA LNU, et al.                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 28). The motion is ripe for adjudication. For the outlined reasons, Defendant's motion is **GRANTED**.

### I.    SUMMARY OF THE FACTS

This is action brought was by Plaintiff Cornelius L. King ("King") under 42 U.S.C. § 1983. (Am. Compl., DN 15). King is incarcerated at Daviess County Detention Center but was previously housed at Warren County Regional Jail ("WCRJ"). (Am. Compl. 1). King asserted claims against Stephen Harmon ("Harmon"); "Warren County Regional Commonwealth"; Deputies Marrissa, Cooper, and Deidre; and WCRJ "Medical Department." (Am. Compl. 2-3). Harmon, Marrissa, Cooper, and Deidre were sued in their individual capacities only. (Am. Compl. 2-3). Following initial screening pursuant to 28 U.S.C. § 1915A, the sole remaining claim asserts deliberate indifference to King's safety by Deputies Marrissa, Cooper, and Deidre (collectively "Defendants"). (Mem. Op. & Order 5, DN 17).

King alleges the following in the Amended Complaint:

Officer Marrissa was the officer who prevoked the situation and Officer Mr. Cooper and Officer Deidre and all this misconduct took place of the watch of Steve Harmon and Warren County Commonwealth, April the 4th a situation took place were a inmate that was convicted of murder charged at me with a sharpe pencil and then attempted to attack another inmate that I was in the unit with Unit A-8 and this took

>place on camera in the center of the unit. Him and the other inmate went to the hole and the inmate as they were taking him out he was telling them, "It ain't over." Well when the individual was released from segregation they placed him back in the unit. The staff member listed above. He returned back in the unit and we got in a bad altercation were I was injured. The inmate attacked me and as he did other inmates closed the door so that I could not get away placing me in even more danger. They were already aware of the previous situation thats why they said I didn't go to the hole the first time. Because they said I did nothin wrong. They could have prevented this situation by not placing him back in the unit with me 2 days later on April the 6th.

(Am. Compl. 4-5). King names Joshua Crouch ("Crouch") as his attacker . (Compl. 4, DN 1).

Defendants move for summary judgment. (Defs.' Mot. Summ. J., DN 28). They detail King's contentious history at WCRJ and assert that he has not shown deliberate indifference regarding the altercations. (Defs.' Mem. Supp. Mot. Summ. J. 3-15, DN 28-1 [hereinafter Defs.' Mem.]).

## II. JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the evidence, however, is "not required to be resolved conclusively in favor of the

party asserting its existence . . . ." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. DISCUSSION

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted) (citation omitted). Officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *see also Browning v. Pennerton*, 633 F. Supp. 2d 415, 423 (E.D. Ky. 2009) ("A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' not absolute safety." (quoting *Farmer*, 511 U.S. at 844)). This includes "protect[ing] prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks omitted) (citation omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The onus rests upon corrections officials as they "stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, [so] the government and its officials are not free to let the state of nature take its course." *Id.* at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726 (6th Cir. 2022) (quoting *Farmer*, 511 U.S. at 834). Rather, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Rhodes v. Michigan*, 10 F.4th 665, 674-75 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 834).

Proving a failure-to-protect claim hinges upon a key inquiry: the Eighth Amendment provides a right to be free from cruel and unusual punishment only to convicted inmates. *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016). The Fourteenth Amendment's Due Process Clause applies to pretrial detainees. *Id.* Historically, this distinction was "inconsequential," as "pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates'" and the analysis remained the same. *Id.* (citation omitted); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Now, the Sixth Circuit has "explicitly taken the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that individual defendant acted (or failed to act) deliberately and recklessly." *Westmoreland*, 29 F.4th at 728 (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)). When convicted inmates bring these failure-to-protect claims, they must still satisfy both an objective and subjective component. *Farmer*, 511 U.S. at 834; *Westmoreland*, 29 F.4th at 726; *Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022).

Here, the Amended Complaint averred that King was a pretrial detainee. (Am. Compl. 1). King's statement was unopposed at the time, so the deliberate indifference claims continued under the Fourteenth Amendment. (Mem. Op. & Order 5). Defendants now proffer a Commitment Order by the Daviess Circuit Court which pre-dates King's allegations. (Defs.' Mot. Summ. J. Ex. A, DN 28-2). King has not disputed the argument he is a convicted inmate. (*See* Pl.'s Resp. Defs.' Mot. Summ. J., DN 32 [hereinafter Pl.'s Resp.]). Thus, King's proper status is not a pretrial detainee, but rather he is a convicted inmate. Therefore, King must show both components necessary under the Eighth Amendment rubric. *See Westmoreland*, 29 F.4th at 726.

The objective component requires a "show[ing] that the failure to protect from risk of harm is objectively 'sufficiently serious[,]' . . . [and] 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (internal

citation omitted) (quoting *Farmer*, 511 U.S. at 834); *see Westmoreland*, 29 F.4th at 726 ("A prison official violates an inmate's rights only if the official is 'deliberate[ly] indifferen[t] to inmate health or safety.'" (alterations in original) (quoting *Farmer*, 511 U.S. at 834)); *see also Rhodes*, 10 F.4th at 673-74. This "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Zakora*, 44 F.4th at 469 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). Moreover, a "causal link" is essential between the defendant's actions to the risk of harm. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994).

The subjective component looks to whether the official acted "with a 'sufficiently culpable state of mind'" and "knows of and disregards an excessive risk to inmate health or safety[.]" *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Farmer*, 511 U.S. at 834); *Zakora*, 44 F.4th at 469 (alteration in original) (internal quotation marks omitted) (quoting *Rhodes*, 452 U.S. at 347). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Zakora*, 44 F.4th at 469 (alteration in original) (quoting *Rhodes*, 10 F.4th at 674-75); *see Cretacci v. Call*, 988 F.3d 860, 868 (6th Cir. 2021) (noting that a plaintiff must show "'the official . . . subjectively perceived facts from which to infer a substantial risk to the prisoner,' . . . the official 'did in fact draw the inference,' and . . . the official 'then disregarded that risk.'" (quoting *Richko*, 819 F.3d at 915)); *cf. Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020) (noting that "[a]n official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to show deliberate indifference. (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 838)). This is addressed through "an individualized assessment of each Deputy . . . ." *Bishop*, 636 F.3d at 767; *see Thompson*, 29 F.3d at 242 (noting

5

that a plaintiff's "Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violated the inmates' right to personal safety." (citation omitted)).

Additionally, a plaintiff "must prove that each Deputy had enough personal contact with him to be subjectively aware of his vulnerability to attacks or the abuse that he alleges he was suffering." *Bishop*, 636 F.3d at 768; *see Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others . . . ."). Ultimately, "[a] plaintiff may rely on circumstantial evidence to prove a defendant's subjective knowledge." *Young v. Campbell Cnty.*, 846 F. App'x 314, 321 (6th Cir. 2021) (citing *Farmer*, 511 U.S. at 842).

Defendants sent King a Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, which sought admissions that King never notified WCRJ officials about the alleged pencil attack. (Defs.' Mem. 10; *see* Defs.' Mot. Summ. J. Ex. I, at 12, DN 28-10; *see also* Defs.' Notice Service Disc., DN 25). King did not respond, and Defendants seek to construe these requests as admissions. (Defs.' Mem. 10). Fed. R. Civ. P. 36(a)(3) prescribes that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves . . . a written answer or objection addressed to the matter and signed by the party . . . ." Thus, traditionally, "a party's failure to respond within thirty days means that the request for admissions are deemed admitted by default." *Bell v. Konteh*, 253 F.R.D. 413, 415 (N.D. Ohio 2008) (citing Fed. R. Civ. P. 36(a)(3)). However, "admissions from a pro se litigant that are deemed admitted by default 'cannot be the sole basis for granting summary judgment if Plaintiff was not warned in the requests for admissions of the consequence of failing to respond timely.'" *Compton v. Laing*, No. 1:21-CV-00104-GNS, 2022 U.S. Dist. LEXIS 110369, at *6 (W.D. Ky.

6

June 21, 2022) (quoting *Jones-Bey v. Conrad*, No. 3:16-cv-723-DJH, 2020 U.S. Dist. LEXIS 91006, at *9 (W.D. Ky. May 26, 2020)); *see Gordon v. Jones*, No. 3:08CV-P460-S, 2011 U.S. Dist. LEXIS 23320, at *14-15 (W.D. Ky. Mar. 7, 2011). As a sister court explained:

> [P]ro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served. Without such notice, pro se prisoners will most likely not be aware that failure to respond to a request for admission would result in the admission of the matters contained in the request. To hold otherwise would allow parties opposing pro se prisoner complaints to use Rule 36 procedures as a snare which prevents pro se prisoners from opposing summary judgment.

*Jones-Bey*, 2020 U.S. Dist. LEXIS 91006, at *10 (alteration in original) (quoting *Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998)); *see Gordon*, 2011 U.S. Dist. LEXIS 23320, at *15 ("It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a [*pro se*] party because a deadline is missed." (alteration in original) (quoting *United States v. Turk*, 139 F.R.D. 615, 618 (D. Md. 1991)). In this instance, Defendants' requests did not warn King of the consequences. (Defs.' Mot. Summ. J. Ex. I). Thus, summary judgment will not be granted based solely on King's failure to respond.

Next, Defendants proffer an affidavit from WCRJ Major Brian McPherson. (Defs.' Mot. Summ. J. Ex. B, DN 28-3 [hereinafter McPherson Aff.]). Major McPherson reports King was booked and went through intake at WCRJ in January 2020 and never previously requested separation from another inmate while incarcerated, nor did he need to be separated from any inmate at WCRJ. (McPherson Aff. ¶ 3; *see* Defs.' Mot. Summ. J. Ex. C, DN 28-4). King was offered a "Protective Custody Request Form," which he refused. (McPherson Aff. ¶ 3; *see* Defs.' Mot. Summ. J. Ex. D, DN 28-5). Major McPherson recounts King's tumultuous history at WCRJ, involving fifty-three different cell assignments, as well as repeated confrontations with WCRJ officials and other inmates. (McPherson Aff. ¶¶ 4-8; *see* Defs.' Mot. Summ. J. Ex. E, DN 28-6

[hereinafter Incident Reports]). These conflicts included stealing property, insulting and threatening WCRJ officials and inmates, and in one instance, threatening to kill an inmate's two-month-old son. (McPherson Aff. ¶¶ 4-8; Incident Reports 4).

King alleges Crouch tried to attack him and another inmate with a pencil on April 4, 2021. (Am. Compl. 4). Major McPherson recounts it differently: Deputy Chad Whitaker observed Crouch having redness and bruising on his face and later review of the camera footage "discovered that Inmate Crouch and Inmate Johnson were in a verbal altercation, which led to Inmate Johnson striking Inmate Crouch in the face." (McPherson Aff. ¶ 9). Notably, "[King] was not involved in the altercation other than standing between the two inmates[;] [t]here was no evidence that Inmate Crouch threatened Plaintiff with a pencil . . . ." (McPherson Aff. ¶ 9) (citation omitted). This is corroborated by an internal Incident Report completed by Deputy Whitaker. (Incident Reports 24). The report indicates "Inmates Johnson and Crouch were in a verbal altercation that lead [sic] to Inmate Johnson striking Inmate Crouch a few times in the face." (Incident Reports 24). Crouch did not retaliate, though, "due to Inmate King standing between them[,]" while "Johnson would randomly swing over King to strike Crouch." (Incident Reports 24).

Subsequently, King alleges he had an altercation with Crouch on April 6, 2021, resulting in King's injuries. (Am. Compl. 4-5). Major McPherson confirms an altercation occurred but provided additional information: "Deputy Rakers asked Lieutenant Gilmore to review the camera footage from Cell A4 after he found Inmate Crouch pacing the cell and [King] and Inmate Emberton cussing at Inmate Crouch. . . . Lieutenant Gilmore reviewed the camera footage and confirmed there was a fight between the inmates." (McPherson Aff. ¶ 10) (citation omitted). Again, this recollection is supported by an Incident Report completed by Deputy Dylan Rakers on April 6, 2021. (Incident Reports 25). Deputy Rakers described several inmates being inside Cell

A4-6 and asking for the door to be opened, and upon their exit from the cell, Crouch was "pacing the cell appearing to be agitated" while King and Emberton "were cussing at Inmate Crouch asking why he start[ed] stuff." (Incident Reports 25). Deputy Rakers requested Lieutenant Gilmore review the footage, and the report notes that "she concluded there was a fight and all four inmates [would] be placed in observation." (Incident Reports 25). Lieutenant Gilmore updated the report that day and confirmed a fight occurred and that King, Crouch, and three other inmates were in the cell, leading to all five being placed in observation. (Incident Reports 25).

Major McPherson concludes "[t]here was no reason for Defendants to know that [King] and Inmate Crouch would get into an altercation on April 6, 2021." (McPherson Aff. ¶ 11). WCRJ officials did not observe Crouch threaten King directly or via camera, nor did King and Crouch have a "stay-away" from each other. (McPherson Aff. ¶ 11). Major McPherson notes that "[King] never notified anyone at WCRJ in writing or verbally that an inmate charged at him with a pencil or that Inmate Crouch presented a risk to his safety. [King] could have requested protective custody if he felt that his safety was at risk but never did." (McPherson Aff. ¶ 11). Reviewing the reports, Deputies Marrissa, Cooper, and Deidre were not named, mentioned, or insinuated to be involved, nor did the reports suggest they knew about the incidents. (Incident Reports 24-25).[1]

Given the lack of information to demonstrate Defendants' individual knowledge, to establish their deliberate indifference to King's risk of harm, or to link Defendants' individual actions with the altercations, Defendants have demonstrated the absence of a genuine issue of

---

[1] The Incident Reports span from January 23, 2020, through April 6, 2021. (Incident Reports 1-25). Deputies Deidre and Cooper never created a report, nor were they mentioned. Deputy Marrissa (presumably Deputy Marissa Gilmore—distinct from Lieutenant Kayla Gilmore) was referenced only once, in a March 21, 2021, report for an incident unrelated to this action. (Incident Reports 21). The report discussed King being placed in observation for abusive language towards Deputy Marrissa and disrupting jail operations. (Incident Reports 21).

9

material fact. *Celotex Corp.*, 477 U.S. at 323. Thus, the burden shifts to King to present facts indicating a genuine issue of a disputed material fact. *Matsushita*, 475 U.S. at 586-87.

King's Amended Complaint alleges "Officer Marrissa was the officer who prevoked [sic] the situation . . . ." (Am. Compl. 4). As for Deputies Cooper and Deidre, King continues, "and Officer Mr. Cooper and Officer Deidre and all this misconduct took place of the watch of Steve Harmon . . . ." (Am. Compl. 4). King does not explain what Defendants knew or their relation to the altercations. (Am. Compl. 4-5). King's initial Complaint fares no better, as the only reference to any deputy states, "[w]hen inmate Crouch was release[d] from segregation, Steve Harmon and his deputies placed him back in the unit . . . ." (Compl. 5). King's Complaint contains grievances against WCRJ related to the altercation, but none mention any of the Defendants. (Compl. Ex. A, DN 1-3). Finally, King's response does not discuss Defendants; instead, King reiterates the alleged facts and asserts that "[t]he staff members allowed these things because of negligence." (Pl.'s Resp. 3).[2]

This is insufficient as "the plaintiff must show that 'the official acted with a culpable enough state of mind, rising above gross negligence.'" *Burwell v. City of Lansing*, 7 F.4th 456, 471 (6th Cir. 2021) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)). King presents no direct or circumstantial evidence to suggest Defendants individually had any knowledge of his situation, to prove their "personal contact with him to be subjectively aware of his vulnerability to attacks," or to establish the requisite "causal link" between the Defendants' individual actions and the alleged attack. *Bishop*, 636 F.3d at 768; *Thompson*, 29 F.3d at 242-43; *see Beck v. Hamblen*

---

[2] Following the reply, King filed a letter with the Court alleging misconduct by WCRJ officials, including Deputy Marrissa. (Pl.'s Letter 1-2, DN 35). Plainly, the letter relates to alleged misconduct occurring two weeks prior to the altercations and had nothing to do with Crouch. (Pl.'s Letter 1-2).

10

*Cnty.*, 969 F.3d 592, 601 (6th Cir. 2020). Rather, King relies upon generalized allegations that do not distinguish which actions were taken by which officials. This lacks the required specificity to impose liability. *See Gibson*, 926 F.2d at 535. Therefore, even when viewing the facts in the light most favorable to King, he fails to meet the shifted burden of demonstrating the existence of a genuine issue of a disputed material fact essential to the case. *Matsushita*, 475 U.S. at 586-87. As such, summary judgment is proper in favor of Defendants.

## V.      CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 28) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

December 14, 2022

cc:   Cornelius L. King, *pro se*
      counsel of record